1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

MICHELLE MARIE KEENER,

12          Plaintiff,

13    v.

14    COMMISSIONER OF SOCIAL SECURITY,

15          Defendant.

16
17
18

Case No.  1:22-cv-01061-SAB

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 14, 18)

19                                          **I.**

20                              **INTRODUCTION**

21          Plaintiff Michelle Marie Keener ("Plaintiff") seeks judicial review of a final decision of

22    the Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently

23    submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social

24    Security Act.   The matter is currently before the Court on the parties' briefs, which were

25    submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons set

26    forth below, Plaintiff's motion for summary judgment shall be denied and Defendant's cross-

27    _____

28    [1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 9, 12, 13.)

motion for summary judgment shall be granted.

## II.

## BACKGROUND[2]

Plaintiff filed the instant applications for Social Security benefits under Title II and for Supplemental Security Income ("SSI") under Title XVI on December 13 and 23, 2019, respectively, alleging disability beginning June 2, 2012.[3]  (See Admin. Rec. ("AR") 221–35, ECF No. 11-11.)   Plaintiff's claims were initially denied on June 11, 2020, and denied upon reconsideration on September 25, 2020.  (AR 71–94, 95–131, 134–45, 147–53.)  On March 18, 2021, Plaintiff, represented by counsel,[4] appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Lisa Lunsford (the "ALJ").  (AR 45–70.)  Vocational expert ("VE") Susan Creighton-Clavel, also testified at the hearing.  On July 9, 2021, the ALJ issued a decision denying benefits.  (AR 18–42.)  On June 28, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 2–7.)

Plaintiff initiated this action in federal court on August 23, 2022, and seeks judicial review of the denial of her applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on November 18, 2022.  (ECF No. 11.)  On January 3, 2023, Plaintiff filed her opening brief/motion for summary judgment.  (ECF No. 14.)  On March 16, 2023, Defendant filed an oppositional cross-motion for summary judgment.  (ECF No. 18.)  Plaintiff did not file

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] A claimant who is disabled and has contributed income to the Social Security program may be eligible for disability benefits under Title II.  See 42 U.S.C. §§ 401, et seq.  A claimant who is disabled with low income may be eligible for SSI under Title XVI.  See 42 U.S.C. §§ 1382, et seq.  As distinct from Title II disability benefits, a claimant is eligible for SSI starting the month after the application was filed.  20 C.F.R. § 416.335.  Further, while a claimant's complete medical history (i.e., records of the claimant's medical sources covering at least the 12 months preceding the month in which an application is filed) must be considered for purposes of his application, 20 C.F.R. § 416.912, the ALJ's disability determination is based on whether the claimant was under a disability as of the date the application was filed.

[4] At the administrative level, Plaintiff was represented by attorneys Bradford Myler and Tim Carpenter of the Olinsky Law Group; Mr. Carpenter represented Plaintiff at the administrative hearing.  (See AR 21, 32–33, 8–12.)  For purposes of the instant appeal, Plaintiff is represented by attorney Stuart Barasch, also of the Olinsky Law Group. (See ECF No. 14 at 1.)

any reply brief, and the matter is now deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

### A.   The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to both claims addressed in the instant matter.

1   Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

2   on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

3   claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

4   proof from step one through step four.

5        Before making the step four determination, the ALJ first must determine the claimant's

6   RFC.   20 C.F.R. § 416.920(e);  Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

7   1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his]

8   limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§

9   404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments,

10  including those that are not severe.   20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security

11  Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is

12  not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See

13  20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying

14  the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the

15  claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d

16  1044, 1049 (9th Cir. 2001).

17       At step five, the burden shifts to the Commissioner, who must then show that there are a

18  significant number of jobs in the national economy that the claimant can perform given his RFC,

19  age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

20  1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

21  ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114;

22  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation,

23  the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

24  for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035,

25  1039 (9th Cir. 1995)).

26  _____

27  [7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they

28  are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.      Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, July 9, 2021 (AR 24–37):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2018, and Plaintiff has not engaged in substantial gainful activity since June 2, 2012, the alleged onset date.  (AR 24 (citing 20 C.F.R. §§ 404.1571 et seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe medically determinable impairments: chronic right shoulder degenerative joint disease, status post rotator cuff repair, right elbow degenerative changes, status post lateral epicondylar release, bilateral knee degenerative joint disease, asthma, chronic obstructive pulmonary disease ("COPD"), coronary artery disease ("CAD"), fibromyalgia, and obesity.  (AR 24–25 (citing 20 C.F.R. §§ 404.1520(c); 416.920(c)) (citations to the record omitted).)  The ALJ also noted Plaintiff has nonsevere medically determinable impairments of hypertension, sinusitis, migraine headaches, left heel spurs, gastroesophageal reflux disease ("GERD"), anemia, anxiety, and depression.  (AR 25 (citations to the record omitted).)  Nonetheless, the ALJ noted she considered any potential effects these purported impairments might cause or contribute to, in combination with Plaintiff's other impairments to the RFC.  (Id.)  In reaching this determination, the ALJ also considered the paragraph B criteria and found that Plaintiff's mental impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.[8]  (AR 25–26.)   More

---

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or

specifically, the ALJ determined Plaintiff has "mild" limitations in the areas of "concentrating, persisting, or maintaining pace" and "adapting or managing oneself," and no limitations in the areas of "understanding, remembering or applying information" and "interacting with others." (Id.)   The ALJ also considered the "paragraph C" criteria, and determined this was also not satisfied.[9]  (AR 26–27.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 27–29 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926).)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can: use her right upper extremity to occasionally overhead reach; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; have occasional exposure to vibration and extreme cold; have occasional exposure to hazards such as moving machinery, heights, or uneven terrain; and have occasional exposure to fumes, odors, dusts, gases, and poor ventilation.**

(AR 29–34 (citing 20 C.F.R. §§ 404.1529; 416.929; 404.1520c; 416.920c; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is capable of performing her past relevant work as a travel agent (Dictionary of Occupational Titles ("DOT") 252.152-010, a sedentary work position with a specific vocational preparation ("SVP") level of 5).  (AR 34–35 (citing 20 C.F.R. §§ 404.1565; 416.965).)

---

effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

[9] To satisfy the "paragraph C" criteria, there must be a medically documented history of the existence of the mental disorder in the listing category over a period of at least two years and there must be evidence of both: (1) medical treatment, mental health therapy, psychosocial support (s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In addition, the ALJ determined there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, in light of her age, education, work experience, and RFC.  The ALJ noted Plaintiff was born on July 24, 1969, and was 42 years old (which is defined a younger individual age 18–49) on the alleged disability onset date; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," regardless of whether Plaintiff has transferrable job skills.  (AR 35 (citing 20 C.F.R. §§ 404.1563; 416.963; 404.1564; 416.964; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Office helper (DOT 239.567-010), a light-exertional, unskilled work position, SVP 2, with approximately 112,000 jobs available in the national economy;

- Information clerk (DOT 237.367-018), a light-exertional, unskilled work position, SVP 2, with approximately 83,000 jobs available in the national economy; and

- Mailroom clerk (DOT 209.687-026), a light-exertional, unskilled work position, SVP 2, with approximately 68,000 jobs available in the national economy.

(AR 35–36 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT.  (AR 36 (citing SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000)).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from June 2, 2012 (the alleged onset date), through July 9, 2021 (the date of decision).  (AR 36 (citing 20 C.F.R. §§ 404.1520(f); 416.920(f)).)

///

///

# V.

## DISCUSSION

Plaintiff purports to assert a single issue on appeal, which she vaguely and broadly characterizes as "the ALJ performed an erroneous assessment of Plaintiff's fibromyalgia." (ECF No. 14 at 2.) On this basis, Plaintiff seeks reversal and remand with an award of benefits. (Id. at 15–19.)

Plaintiff's challenge is somewhat perplexing, as the RFC determination which informs the ultimate conclusion of disability or nondisability is based upon a comprehensive review of the entire medical record and synthesis of the medical evidence, resolution of conflicts and ambiguities in the medical testimony, and credibility determinations. Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007). For example, the regulations expressly require the step two determination be derived from consideration of the combined effect of all of the claimant's impairments on her ability to function. SSR 85-28, at *4; Bowen v. Yuckert, 482 U.S. 137, 306, 140–41 (1987)); Smolen, 80 F.3d at 1289–90.

Here, Plaintiff only purports to challenge the ALJ's assessment of her fibromyalgia impairment, even though the ALJ determined Plaintiff had several other severe medically determinable impairments (i.e., chronic right shoulder degenerative joint disease, status post rotator cuff repair, right elbow degenerative changes, status post lateral epicondylar release, bilateral knee degenerative joint disease, asthma, COPD, CAD, and obesity)—a determination which Plaintiff has not challenged. (AR 24–25.) It is possible Plaintiff is implicitly challenging the ALJ's review of her fibromyalgia condition to the extent it affects the ALJ's synthesis of the medical and non-medical evidence of record as a whole, though Plaintiff does not appear to challenge any other particular findings made by the ALJ.[10] In any event, a contextual reading of Plaintiff's argument suggests Plaintiff largely takes issue with the ALJ's discounting of her subjective testimony regarding her fibromyalgia symptoms, as Plaintiff disputes the ALJ's

---

[10] As the Court need not consider claims not actually argued specifically and distinctly in a party's opening brief, any other challenges are deemed waived. Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003).

purported over-reliance on objective medical evidence to discount Plaintiff's fibromyalgia allegations, while ignoring Ninth Circuit requirements for an ALJ's evaluation of fibromyalgia as a medical impairment (id. at 8–12); the ALJ's characterization of her treatment as "conservative" (id. at 12–13); and the ALJ's consideration of Plaintiff's activities of daily living ("ADLs") to discount the severity of her condition (id. at 13–15.)  The Court will address Plaintiff's argument accordingly.

### A. Arguments Regarding Legal Standard for Analyzing Fibromyalgia

As an initial matter, however, the Court addresses Plaintiff's argument that the ALJ's evaluation of the record and decision is inconsistent with Ninth Circuit precedent and social security rules governing the ALJ's assessment of evidence with respect to fibromyalgia cases.

SSR 12-2p specifically governs an ALJ's evaluation of fibromyalgia.  SSR 12-2p, available at 2012 WL 3104869 (Jul. 25, 2012).  The Commissioner notes fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  Id. at *2.  However, the Commissioner also notes that, "[a]s with any claim for disability benefits, before [the SSA finds] that a person with [a medically determinable impairment of fibromyalgia] is disabled, [it] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity."  Id.  In claims involving fibromyalgia, SSR 12-2p requires not only a diagnosis of fibromyalgia from a licensed physician (a medical or osteopathic doctor), but also express documentation that the physician reviewed the claimant's medical history and conducted a physical exam.  Id.  Further, the ALJ must review the physician's treatment notes to see if they are consistent with the diagnosis of fibromyalgia, determine whether the claimant's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the claimant's physical strength and functional abilities.  Id.  Specifically, SSR 12-2 states that, under the 1990 ACR Criteria for the Classification of Fibromyalgia, the claimant must meet the following criteria: (1) "a history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain

(the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months"; (2) at least 11 positive tender points on physical examination, which must be found bilaterally and both above and below the waist;[11] and (3) evidence that other disorders that could cause the symptoms or signs were excluded, that is "evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs.  Laboratory testing may include other imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor)."  Id. at *2–3.  Alternatively, under the 2010 ACR Preliminary Diagnostic Criteria, a claimant may satisfy the following criteria: (1) a history of widespread pain (as previously described); (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (as previously described).  Id. at *3.

In addition, there is a line of Ninth Circuit cases which expressly discuss fibromyalgia as an impairment and direct ALJs to carefully consider the "unique characteristics and diagnostic methods" of fibromyalgia and "consider a longitudinal record whenever possible" when issuing a disability decision in which the claimant has established a diagnosis of fibromyalgia.  See, e.g., Revels v. Berryhill, 874 F.3d 648, 656–57, 662 (9th Cir. 2017) (reversing ALJ decision rejecting medical opinions and symptom testimony as error arising from "an apparent fundamental misunderstanding of fibromyalgia" and failure to properly analyze claimant's fibromyalgia-related symptoms pursuant to SSR 12-2p, and noting ALJs are directed to look at longitudinal records in determining cases involving fibromyalgia, due to its unique symptoms); Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) (finding ALJ erred by "effectively requiring 'objective'

---

[11] SSR 12-2p further requires the tender points must be located amongst the following 18 tender point sites: occiput (base of skull), low cervical spine (back and side of the neck), trapezius muscle (shoulder), supraspinatus muscle (near the shoulder blade), second rib (top of the rib cage near the sternum or breast bone), lateral epicondyle (outer aspect of the elbow), gluteal (top of the buttock), greater trochanter (below the hip), and inner aspect of the knee. SSR 12-2p at *3.

1   evidence for a disease that eludes such measurement") (internal brackets omitted); David v.

2   Kijakazi, No. 20-36035, 2021 WL 6101257, at *1 (9th Cir. Dec. 21, 2021) (ALJ erred in ignoring

3   the longitudinal record of claimant with fibromyalgia symptoms).

4        Here, Plaintiff argues the ALJ erred by considering the objective medical evidence in her

5   evaluation of Plaintiff's symptoms because Ninth Circuit law holds that normal examinations

6   relating to muscle strength, sensory functions, joints/joint swelling, and reflexes are irrelevant to,

7   and incapable of, discounting fibromyalgia or its limiting effects.  (ECF No. 14 at 9–12 (citing

8   Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting

9   Muhammad B. Yunus, Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis, Consultant,

10  June 1996, at 1260)).)  The Court finds this argument to be unpersuasive.[12]

11       As noted repeatedly in SSR 12-2p, the ALJ is required to consider objective medical

12  evidence in evaluating claims based on fibromyalgia symptoms.  See, generally, SSR 12-2p at

13  *2–3.   Similarly, the Ninth Circuit has repeatedly affirmed denials of benefits where the

14  claimant's symptom allegations regarding fibromyalgia were discounted based on conflicts with

15  the objective evidence, physician opinions, the claimant's activities of daily living, and/or other

16  reasons consistent with ordinary techniques of credibility evaluation.  See, e.g., Weiss v. Kijakazi,

17  No. 22-35557, 2023 WL 4030839 (9th Cir. Jun. 15, 2023) (affirming ALJ's rejection of

18  subjective fibromyalgia allegations where medical evidence and ADLs showed they were

19  overstated); Ferreira v. Kijakazi, No. 22-15906, 2023 WL 2755590 (9th Cir. Apr. 3, 2023)

20  (affirming ALJ's rejection of treating rheumatologist's opinion as inconsistent with other medical

21  opinions and objective record, and affirming ALJ's discounting of claimant's fibromyalgia

22  testimony as inconsistent with her ADLs and medical evidence); Franchino v. Kijakazi, No. 21-

23  17140, 2022 WL 16548014 (9th Cir. Oct. 31, 2022) (affirming finding of nondisability, "It is true

24  that in fibromyalgia cases, medical evidence must be considered in light of its 'unique symptoms

25  and diagnostic methods.' … Here, however, [the claimant's] statements that contradict the

26  medical record or are inconsistent with her actions detract from her credibility and weigh in favor

27

28  [12] It is perhaps worth noting that in Rollins, upon which Plaintiff relies (for the dissenting opinion), the Court upheld
    the ALJ's rejection of the claimant's symptom testimony related to her fibromyalgia.  Rollins, 261 F.3d at 857.

of the ALJ's decision.") (citations omitted); <u>Walters v. Kijakazi</u>, No. 20-35861, 2022 WL 1046208 (9th Cir. Apr. 7, 2022) (ALJ reasonably found claimant's fibromyalgia was not medically determinable under agency standards where objective medical evidence did not meet all specified criteria to show symptoms or their severity, "a physician's diagnosis alone cannot establish a medically determinable impairment for social security purposes," and medical opinions that largely relied on claimant's self-reports were unreliable) (internal quotation marks omitted); <u>Smith v. Berryhill</u>, 752 Fed. App'x 473, 475–76 (9th Cir. 2019) (affirming rejection of subjective testimony and doctor's opinion that were inconsistent with longitudinal record regarding ADLs, and lack of documentation showing symptoms were reported to treating physicians); <u>Blair-Bain v. Astrue</u>, 356 Fed. App'x 85, 87–88 (9th Cir. 2009) (affirming denial of benefits to claimant with "severe fibromyalgia," finding ALJ appropriately rejected medical opinions of limitations that were inconsistent with medical evidence or based on claimant's subjective complaints, which the ALJ properly discredited, and because no functional limitations or impairments were identified that existed before the last date insured); <u>Speer v. Barnhart</u>, 169 Fed. App'x 500, 501 (9th Cir. 2006) (affirmed ALJ's rejection of symptom testimony related to fibromyalgia where claimant's allegations were contradicted by her ADLs).

Thus, the aforementioned authorities do not purport to create an entirely different standard of review of the evidence in fibromyalgia cases in which the objective evidence cannot play a factor in the ALJ's consideration of a claimant's limitations; nor do they require an ALJ to accept as true a claimant's subjective allegations in the face of evidence supporting an adverse credibility determination. <u>See</u> SSR 12-2p at *5–6 (noting the ALJ must apply the same 5-step sequential evaluation process used in all disability cases to determine whether a claimant with an impairment of fibromyalgia is disabled); <u>see also</u> <u>Smith</u>, 752 Fed. App'x at 475 (affirming ALJ's determination of nondisability, holding "The usual rules for assessing claimants' credibility apply to disability claims arising from a fibromyalgia diagnosis."). Rather, they place great emphasis on the ALJ's review of the longitudinal medical record: "Because the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE has access to longitudinal information

about the person…"   SSR 12-2p at *5.   And, if the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, the ALJ is required to consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."   Id.

While Plaintiff argues the ALJ failed to evaluate the record and Plaintiff's symptoms consistent with Ninth Circuit cases and SSR 12-2p, she does not specify how the ALJ's discussion of the medical evidence was deficient.   At most, Plaintiff appears to take issue with the ALJ's statement that "objective evidence regarding fibromyalgia and migraine impairments is nearly non-existent, as detailed under Finding #4, …" arguing that the ALJ improperly relied solely on normal examination results to reach this conclusion.   (ECF No. 14 at 11 (citing AR 31).) This argument takes the ALJ's statement out of context.   As explained in much greater detail earlier in her decision, the ALJ did not reject Plaintiff's (unspecified) fibromyalgia symptoms as unsupported by the objective medical evidence, on the basis that the objective medical evidence showed normal examinations relating to "muscle strength, sensory functions, and reflexes," or that "joints appear normal and further musculoskeletal examination indicates no objective joint swelling" (ECF No. 14 at 9); rather, the ALJ found "no clear evidence suggesting a listing-level condition associated with fibromyalgia in the period at issue" because, in her review of the longitudinal record, "only a few of the more than 1,700 pages of medical evidence on file in this case" even *mentioned* fibromyalgia.   (AR 28.)   Furthermore, of the treatment note upon which Plaintiff heavily relies from March 9, 2020 (many years after Plaintiff's alleged date of disability onset, June 2, 2012, as well as after the March 31, 2018 final date of coverage for SSI purposes), the ALJ found the treatment note was inconsistent with the majority of the longitudinal record, appeared to apply purported criteria from the "2016 revisions by the American College of Rheumatology" which are not consistent with the criteria identified in SSR 12-2p, and failed to identify the purported "12 tender points" finding as required under SSR 12-2p in order to qualify as a legitimate diagnosis of fibromyalgia.   (Id.; AR 585); SSR 12-2p at *2–3.   Thus, the ALJ's

rejection of Plaintiff's allegations of debilitating fibromyalgia symptoms was based on her review of the longitudinal record and determination that "the evidence [did] not contain much in the way of the types of findings and data discussed in [and required by] SSR 12-2p."[13]  (AR 28.)

Finally, the Court notes the Ninth Circuit cases Plaintiff cites to are factually distinguishable from the instant matter.  In cases such as <u>Benecke</u>, the Ninth Circuit found the ALJ improperly discounted a treating rheumatologist's (or other specialist) medical opinion without providing clear and convincing reasons for doing so.  <u>Benecke</u>, 379 F.3d at 593–94 (applying former regulations, reversing ALJ's rejection of multiple treating rheumatologists' opinions diagnosing claimant with fibromyalgia, ignoring record replete with treatment notes documenting severe fibromyalgia symptoms both before and after diagnosis, and basing finding on "sheer disbelief" in claimant's subjective testimony).  Here, by contrast, Plaintiff has not identified any evidence that she was referred to or treated with a specialist for her fibromyalgia.  Moreover, the record is devoid of any treating physician opinions that identify functional limitations based on Plaintiff's fibromyalgia or other impairments.

For these reasons, Plaintiff's argument is unavailing.

**B.     The ALJ Properly Evaluated the Subjective Symptom Testimony**

Upon review of the ALJ's evaluation of the full record, the Court finds the ALJ properly synthesized the medical evidence, resolved conflicts and ambiguities in the medical testimony, and determined credibility in order to reach a well-supported RFC determination, <u>Andrews</u>, 53 F.3d at 1039; <u>Batson</u>, 359 F.3d at 1195; <u>Lingenfelter</u>, 504 F.3d at 1042, such that the ALJ's ultimate conclusion of nondisability is adequately supported by substantial evidence.   In particular, the ALJ's adverse credibility determination with respect to Plaintiff's alleged

---

[13] To this point, the Court also notes there does not appear to be any "evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs," as required under SSR 12-2p.  SSR 12-2p, at *2–3.  To the contrary, the main purpose of Plaintiff's March 2020 medical appointment was to address shoulder pain related to her rotator cuff tear, post-surgery; the fibromyalgia diagnosis was secondary to that.  Further, the treating physician stated, seemingly mistakenly, "a diagnosis of fibromyalgia is valid irrespective of other diagnoses."  (AR 585.)  Nor does the note indicate the treating physician reviewed Plaintiff's longitudinal record prior to making the diagnosis.  Instead, he notes Plaintiff reported she was diagnosed with fibromyalgia years ago, and there is no discussion or citation to that record.  Incidentally, as to Plaintiff's other impairments, Plaintiff was advised to exercise, as she reported none, and to quit smoking (as Plaintiff has reported impairments of asthma and COPD); she stated she was "not interested."  (AR 586.)

fibromyalgia and other impairment symptoms (while impliedly but not expressly challenged by Plaintiff) was properly supported by clear and convincing reasons based on substantial evidence from the record.

Plaintiff alleged disability based on a lung disorder, heart problem, fibromyalgia, knee problem, restless leg syndrome, COPD, depression, and anxiety disorder.  (AR 248.)  She testified that she experiences chronic pain, particularly in her legs.  (AR 55–56.)  Plaintiff testified takes pain medications, including opiates to treat the symptoms.  (Id.)  She testified the first time fibromyalgia "was mentioned" to her was in 2004, but nothing was ever done about it at that time.  (AR 56.)  Plaintiff testified that she was sent to pain management in 2020, that a test was done on her, and she was told at that time that she had fibromyalgia.  (See id.)

As to her other impairments, Plaintiff also testified she had shoulder pain (based on osteoarthritis in her shoulder).  (AR 56.)  She had five heart attacks in the past (the first was nearly 20 years ago), but only went to the hospital for two, and she takes heart medication.  (AR 56–57, 58.)  She underwent a "heart procedure" in March 2018.  (AR 56.)  She uses inhalers and a nebulizer at home to treat her breathing problems arising from COPD.  (AR 57.)  She takes medication for her diabetes, which is at Stage II.  (AR 57–58.)  She testified to "bad" anxiety and depression, which she experienced since she was young, and for which she takes Wellbutrin.  (AR 58.)

Plaintiff testified that she can sit for 20–30 minutes at a time, then her legs start cramping and hurting; but she can do a combination of sitting and stretching for approximately four hours in an eight-hour workday.  (AR 59.)  She testified she can stand for three hours in an eight-hour workday; she can lift/carry 10–20 pounds; she can overhead reach, but "not … too much" with her right shoulder because of brackets that were surgically implanted; and she could "probably" do reaching in other directions.  (AR 59–60.)  Plaintiff testified that her hands and fingers get numb and start tingling if she tries to open a door handle; and pain shoots up her arm if she tries to type or use a pencil.  (AR 60.)  She testified that she can cook but not stand; that her daughter will help with the cooking when her legs bother her; that she can clean her bathroom by herself; that she does not have difficulty driving; and that she cannot walk more than a couple blocks

before experiencing leg pain.  (AR 61–62.)

The ALJ discounted Plaintiff's subjective testimony, which is inclusive of allegations pertaining to Plaintiff's fibromyalgia symptomology, for reasons which Plaintiff disputes.

   1.   Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1040; Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Here, the ALJ found the record supported a finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms were not entirely consistent with the medical evidence and other evidence of record.[14]  (AR 30.)  The ALJ was thus required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.   Lambert, 980 F.3d at 1277.   The Court finds the ALJ's negative credibility determination was based on specific, clear and legitimate reasons that were supported by substantial evidence, as follows.

2.      Allegations Unsupported by the Objective Medical Evidence

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's

---

[14] Again, Plaintiff does not appear to challenge the ALJ's consideration of her other physical impairments, apart from fibromyalgia, or the ALJ's consideration of her mental impairments.  Therefore, the Court shall largely focus on the ALJ's evaluation of the fibromyalgia, noting, again, challenges not expressly raised are deemed waived.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  However, the Court notes the ALJ, as required, considered all of Plaintiff's identified impairments in combination to reach the nondisability determination, and attempting to superficially separate Plaintiff's fibromyalgia from the ALJ's synthesis of the medical evidence may, at times, "parse the ALJ's language too finely"  See Schneider v. Comm'r, 433 Fed. Appx. 507, 509–10 (9th Cir. 2011).

symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins, 261 F.3d at 857; SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).    Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Plaintiff argues the ALJ's sole reliance on objective medical evidence to discount Plaintiff's subjective symptom allegations based on her fibromyalgia was improper.  (See ECF No. 14 at 11–12.)  Plaintiff's argument, however, is unpersuasive and her premise is flawed.  Here, the ALJ identified several reasons, in addition to the non-corroborating objective medical evidence, for discounting Plaintiff's allegations; these are discussed herein.  Further, the ALJ did not merely find Plaintiff's testimony was unsupported by the medical record; she found Plaintiff's allegations of disabling impairments were contradicted by it, as follows.

First, the ALJ found the objective evidence as to impairment severity was "in many

respects, relatively thin."  (AR 30.)  For example, the ALJ noted the objective data—such as imaging scans, cardiac studies, blood pressure readings, lab tests, and height and weight statistics—generally substantiated Plaintiff's CAD, hypertension, anemia, GERD, and obesity, but there was no clear documentation of significant end organ damage or other pertinent complications associated with those conditions (such as a stroke or heart attack) during the at-issue disability period.  (AR 30–31 (citing and comparing AR 376, 414 (assessed for "mild non-Q wave myocardial infarction" in 2003); AR 477 (2013 cardiac work-up showed no evidence of acute myocardial infarction); AR 47–62 (Plaintiff's testimony)).)   The ALJ also noted the objective records generally confirmed Plaintiff's respiratory-related impairments, but that the data in this area was "modest at best," as spirometry tests only showed "mild restrictive [sic] lung defect."  (AR 31 (citing AR 743).)   The ALJ found objective evidence regarding migraine impairments was "nearly non-existent."   (Id.)   As to Plaintiff's right-upper-extremity-related impairments, the ALJ noted only one surgery was performed on that area during the at-issue disability period, it was completed without major complications, and Plaintiff's recovery was complete and unremarkable.  (Id. (citing AR 585 (post-surgery note that "[Plaintiff] is out of the post[-]surgical window for pain and … I don't appreciate overt findings to suggest shoulder pathology as her primary pain generator."); AR 371–2136, generally).)   In addition, the ALJ noted Plaintiff's examination findings, on whole, were "fairly unremarkable," and that Plaintiff often exhibits no major gait abnormalities.  (Id. (citing AR 435, 474, 628, 1194).)

With respect to fibromyalgia, in particular, the ALJ determined the objective evidence regarding fibromyalgia "is nearly non-existent," and expressly noted "fibromyalgia, like several of the claimant's physical and mental conditions, is mentioned in only a few of the more than 1,700 pages of medical evidence on file in this case (*see and compare* [AR 582, 585–86], *for example*, *with* [AR 371–2136] *generally*)."  (AR 28 (emphasis in original).)   The ALJ noted Plaintiff did not appear to be assessed with fibromyalgia until March 9, 2020, and at that time, the assessment was faulty because it was based on "2016 revisions by the American College of Rheumatology," rather than the requirements set forth in SSR 12-2p (which governs fibromyalgia analyses for disability benefits purposes), the documented examination findings themselves were

"abnormal" in comparison to Plaintiff's other physical examinations, and the note reported "12 tender points" but failed to specify the points.  (AR 28 (citing AR 585).)  Further, the ALJ noted "the evidence elsewhere does not contain much in the way of the types of findings and data discussed in SSR 12-2p."  (AR 28.)

Plaintiff challenges the ALJ's evaluation of the medical evidence by pointing to a handful of records which corroborate her impairments and, she argues, demonstrates her debilitating limitations: (1) a March 16, 2018 examination showing muscle weakness and swelling of the lower extremities; (2) a September 14, 2019 x-ray showing degenerative changes of the knee; (3) a September 30, 2019 examination revealing tenderness, imaging results showing mild to moderate degenerative changes, and an MRI showing a full-thickness tear in the right upper extremity—which led to surgical intervention in October 2019; (4) a November 11, 2019 examination revealing tenderness of the musculoskeletal symptom and decreased range of motion in the shoulders and cervical spine; and (5) a treatment note of Plaintiff's March 9, 2020 appointment with Dr. Mandalaywala, in which she was assessed with back pain, joint pain, myalgias, and neck pain, decreased range of motion in the right shoulder, and 12 positive tender points, and was diagnosed with fibromyalgia.  (ECF No. 14 at 6–8 (citing AR 377, 535, 439, 440, 480, 1649–50, 584–85).)

However, "[e]ven assuming without deciding that the medical evidence could support conflicting inferences, the court must defer to the Commissioner where the evidence is susceptible to more than one rational interpretation."  Quinones v. Astrue, No. CV 08-7225 AGR, 2009 WL 3122880, at *3 (C.D. Cal. Sept. 25, 2009) (citing Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) ); see also Andrews, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").  Here, Plaintiff cites to the same evidence of fibromyalgia in the record that is identified and discussed by the ALJ, but merely offers an alternative interpretation of the records.  (Compare ECF No. 14 at 7–8 with AR 28.)  However, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court will not engage in "second-guessing."  Thomas, 278 F.3d at 959; see also Davis v. Berryhill, 736 Fed. App'x 662, 665 (9th Cir. 2018) ("Though [the

claimant] may disagree with the ALJ's interpretation of the record, the latter's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing."). Thus, while Plaintiff may seek to suggest an alternative interpretation of this evidence, such is not sufficient to establish reversible error. See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

Accordingly, the Court finds the objective medical evidence referenced by the ALJ constitutes substantial evidence in the record that, in combination with the ALJ's other reasons, supports the ALJ's adverse credibility determination. Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4.

3.    Allegations Inconsistent with the Medical Opinion Evidence

In addition, the ALJ noted Plaintiff's allegations were inconsistent with the medical opinion evidence.

As noted, contradiction between the claimant's testimony and the relevant medical evidence is a sufficient basis for an adverse credibility finding. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony. We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); Carmickle, 533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion); Hairston, 827 Fed. App'x at 773 (quoting Carmickle with approval) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Stobie, 690 Fed. App'x at 911.

The Ninth Circuit's analysis in Carmickle is most instructive here. In Carmickle, the ALJ rejected the claimant's testimony as to four specific allegations, including the allegation that he could only lift ten pounds occasionally. Carmickle, 533 F.3d at 1160. The ALJ rejected this allegation in favor of a physician's contradictory opinion that the claimant could lift up to ten pounds *frequently* (and twenty pounds occasionally). Id. at 1161. Notably, the claimant's contradiction with the medical opinion was the only reason the ALJ rejected this allegation as

"not entirely credible."  See id. at 1160–61.  In applying the clear and convincing standard, the Ninth Circuit affirmed the ALJ's adverse credibility determination relating to this limitation on the basis that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  Id. at 1161.

Importantly here, the ALJ noted "no medical source has provided opinion evidence supporting greater limitations or otherwise establishing that [Plaintiff] has been unable to perform work-related activities" at any time during the relevant disability period.  (AR 31.)  Instead, "the only detailed formal medical opinions on file in this case are those provided by the State Agency … consultants, all of whom essentially agreed that [Plaintiff] can perform work-related activities" consistent with the RFC.  (AR 32.)  The ALJ found the state agency consultation opinions to be persuasive.  (Id.)  These opinions were deemed to be supported by reasonable explanations with reference to specific findings in the record, and consistent with the overall record.  (Id.)  The opinions were also deemed to be consistent with the other medical opinions.  (Id. (citing AR 371–812).)  Further, the opined limitations are inconsistent with Plaintiff's testimony of totally debilitating fibromyalgia symptoms.

Plaintiff, while challenging the ALJ's reliance on the objective medical evidence, does not challenge the ALJ's evaluation and weighting of the medical opinion evidence.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  She does not dispute the ALJ's finding that there are no medical opinions of record which opine greater limitations arising from Plaintiff's impairments than those contemplated in the RFC determination.  Nor does she dispute the ALJ's determination that Plaintiff's allegations were inconsistent with the State Agency medical opinions regarding her functional limitations.  Id.; see also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).  Accordingly, the Court concludes the ALJ's reference to the medical opinions to identify inconsistencies in Plaintiff's testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the

ALJ's adverse credibility determination.  Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4.

### 4.   Conservative Treatment

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40 (favorable response to conservative treatment undermined claimant's testimony of subjective complaints); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

The ALJ noted Plaintiff's treatment for her conditions was limited to physical therapy, assistive devices (such as inhalers), and medications.  (AR 30); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); id. at 1039–40 (claimant's treatment, including physical therapy, the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset, were deemed "conservative").  The ALJ also noted the scarcity of medical records documenting Plaintiff's treatment for the alleged symptoms and identified impairments.  (AR 27–29); see also Burch, 400 F.3d at 681 (a lack of treatment may support a determination that treatment was conservative).  Accordingly, the ALJ found Plaintiff's treatment, with the exception of the right-shoulder surgery (related to Plaintiff's rotator cuff tear), has been "somewhat conservative in nature."  (AR 31.)

Plaintiff takes issue with this characterization of her treatment.  She argues that treating with opiates, long-term pain management therapy, Cymbalta, and Gabapentin are not conservative treatments for fibromyalgia.  (ECF No. 14 at 12–13.)  However, courts have reached varying conclusions based on the longitudinal records of each particular case as to whether a treatment plan, on whole, may be considered "conservative."  Compare, e.g., Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical

therapy, and an injection) with Revels, 874 F.3d at 667 ("doubting" that epidural steroid shots qualified as "conservative" medical treatment for fibromyalgia).  Here, the Court finds Plaintiff's medications and pain management—to treat, in total, her fibromyalgia as well as the identified impairments of chronic right shoulder degenerative joint disease, status post rotator cuff repair, right elbow degenerative changes, status post lateral epicondylar release, bilateral knee degenerative joint disease, asthma, COPD, CAD, and obesity—in combination with the limited nature of such treatment, was "conservative" within the context of the longitudinal record of this case.  See Woods v. Kijakazi (Woods II), 32 F. 4th 785, 794 (9th Cir. 2022) (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment of mostly medication alone and a knee injection); Zaldana v. Colvin, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination); Martin v. Colvin, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); Traynor v. Colvin, No. 1:13-cv-1041-BAM, 2014 WL 4792593, at *9 (E.D. Cal. Sept. 24, 2014) (finding evidence that Plaintiff's symptoms were managed through "prescription medications and infrequent epidural and cortisone injections" was "conservative treatment" and was sufficient for the ALJ to discount the plaintiff's testimony regarding the severity of impairment); Morris v. Colvin, No. 13-6236, 2014 WL 2547599, at *4 (C.D. Cal. Jun. 3, 2014) (ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin; Jones v. Comm'r of Soc. Sec., No. 2:12-cv-01714-KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished plaintiff's credibility).  Thus, the ALJ did not err by characterizing Plaintiff's

treatment as conservative.

Accordingly, the ALJ identified specific, substantial evidence in the medical record in support of her finding that Plaintiff's treatment was overall conservative in nature, constituting a clear and convincing reason to discount Plaintiff's pain allegations.  Tommasetti, 533 F.3d at 1039–40; Parra, 481 F.3d at 751.

5.      Activities of Daily Living ("ADLs")

Another reason the ALJ provided for discounting Plaintiff's testimony was her ADLs. See Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) ("An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms.")

As the ALJ noted, Plaintiff was often advised by treating physicians to engage in at least some forms of exercise—this demonstrates Plaintiff's treating providers deemed her physically capable of such activity, thus contradicting Plaintiff's allegations of total disability.  (AR 33.)  In addition, the ALJ noted Plaintiff and third parties reported she is generally able to tend to her personal care needs, prepare simple meals, perform some light household chores, and shop in stores, and/or via computer—all activities that one might not expect a person with Plaintiff's allegedly disabling symptoms to be able to perform.  (Id.)  The ALJ also noted Plaintiff's treatments records refer on more than one occasion to her anticipated and/or actual ability to engage in travel-related activities; the ALJ found these records also conflict with Plaintiff's more dire claims of functional infirmity.  (Id. (comparing AR 1692 with AR 1792).)  Finally, the ALJ noted Plaintiff was able to obtain and perform some part-time temporary work during the relevant time period.  (Id.)  On this record, the ALJ concluded that Plaintiff's activities cut against her allegations of totally disabling symptoms.  (Id.)

Plaintiff does not expressly challenge all of the activities identified by the ALJ (see ECF No. 14 at 13–14), but nevertheless takes issue with the ALJ's finding on the basis that such activities are not transferrable to full-time employment and that an ALJ needs to be careful when making such assessments in the fibromyalgia context.  (Id. at 13–15.)  The Court finds this argument to be unavailing.

First, as previously noted, the Ninth Circuit has held that "[t]he usual rules for assessing

26

claimants' credibility apply to disability claims arising from a fibromyalgia diagnosis." Smith, 752 Fed. App'x at 475 (9th Cir. 2019) (affirming rejection of subjective fibromyalgia testimony that was inconsistent with longitudinal record regarding ADLs); see also Weiss, 2023 WL 4030839 (affirming ALJ's rejection of subjective fibromyalgia allegations where medical evidence and ADLs showed they were overstated); Ferreira, 2023 WL 2755590 (affirming ALJ's discounting of claimant's fibromyalgia testimony as inconsistent with her ADLs and medical evidence); Franchino, 2022 WL 16548014 (affirming adverse credibility determination where plaintiff's statements and actions regarding fibromyalgia contradicted the medical record); Speer, 169 Fed. App'x at 501 (affirming ALJ's rejection of symptom testimony related to fibromyalgia where claimant's allegations were contradicted by her ADLs).

Second, Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting. See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family). As the Ninth Circuit has explained, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113; Valentine, 574 F.3d at 694 (while daily activities "did not suggest [Plaintiff] could return to his old job [they] did suggest that [Plaintiff's] later claims about the severity of his limitations were exaggerated").

1    Thus, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that she

2    was not as limited as she claimed was a reasonable and valid basis for discounting her allegations.

3    Importantly, the Court notes the ALJ's adverse credibility determination does not indicate

4    a complete rejection of Plaintiff's pain allegations.  To the contrary, the ALJ carefully considered

5    Plaintiff's allegations and the objective medical evidence supporting much of Plaintiff's pain

6    testimony; this is reflected in the RFC determination, which limits Plaintiff to light work only,

7    with several additional functional restrictions, such as reaching limitations, climb, balance, stoop,

8    kneel, crouch and crawl limitations, and limitations to hazard and environmental exposure.  (AR

9    29.)  Thus, in noting Plaintiff's testimony of debilitating symptoms was inconsistent with the

10   record, the ALJ expressly noted her finding that Plaintiff's testimony was inconsistent only

11   insomuch as Plaintiff's alleged limitations exceeded those set forth in the RFC assessment.

12   In sum, the Court finds the ALJ reasonably interpreted the objective medical and non-

13   medical evidence, and substantial evidence supports the ALJ's relevant findings.   Having

14   determined the ALJ provided sufficiently clear and convincing reasons supported by substantial

15   evidence to discount Plaintiff's subjective symptom allegations, Plaintiff's arguments—which

16   heavily rely upon her own testimony regarding her fibromyalgia symptoms—are unavailing.

17   Furthermore, to the extent Plaintiff may seek to suggest an alternative interpretation of the

18   evidence, her arguments are again unavailing.  This is because, as previously noted, the Court

19   must defer to the decision of the ALJ where evidence exists to support more than one rational

20   interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v.

21   Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either

22   affirming or reversing the Commissioner's conclusions, the court cannot substitute its own

23   judgment for that of the Commissioner); see also Burch, 400 F.3d at 680–81 (the ALJ is the fact-

24   finder, and is entitled to choose between competing interpretations of the record).  "As [the Court]

25   cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's

26   conclusions were supported by substantial evidence."   Shaibi v. Berryhill, 883 F.3d 1102, 1108

27   (9th Cir. 2017).  The ALJ's decision must be affirmed.

28   ///

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 14) is DENIED;

2.  Defendant's oppositional briefing and cross-motion for summary judgment (ECF No. 18) is GRANTED; and

3.  The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Michelle Marie Keener and close this case.

IT IS SO ORDERED.

Dated:   **July 9, 2023**

_____
UNITED STATES MAGISTRATE JUDGE